IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| TERENCE GARVEY, individually and on behalf of classes of similarly situated individuals, | ) ) ) | |
| *Plaintiff*, | ) ) ) | No. 16-cv-11210 |
| v. | ) ) | Judge: Hon. Charles R. Norgle, Sr. |
| FORTEGRA FINANCIAL CORPORATION, a Delaware corporation, PALMER ADMINISTRATIVE SERVICES, INC. a Delaware corporation, | ) ) ) ) ) | |
| *Defendants*. | ) | |

**PLAINTIFF'S OPPOSITION TO MOTION
TO ENFORCE SETTLEMENT AGREEMENT**

Plaintiff Terence Garvey, by counsel, hereby files his opposition to the Motion to Enforce Settlement Agreement (Dkt. 36) (the "Motion") filed by defendants Fortegra Financial Corporation ("Fortegra") and Palmer Administrative Services ("Palmer") (collectively, "Defendants"), and states as follows:

**I.      INTRODUCTION**

Defendants' Motion is undermined by the very words of their counsel, and must be denied. Although Defendants claim in their Motion that the phrase "my client accepts" in an email from Plaintiff's counsel created a binding settlement agreement, a simple review of the parties' correspondence demonstrates that Defendants themselves did not consider a final agreement to have been reached. In the very next email after the supposedly-final agreement, Defendants' counsel described the negotiations as a "potential settlement," asked Plaintiffs' counsel to inform the Court of the "potential settlement," and asked Plaintiff's counsel to draft a proposed settlement agreement. (*See* Roth Decl., Ex. 2, Dkt. 36-3, at 1).

Even before that point, Defendants understood that any potential settlement required a written settlement agreement. The email offer sent by Plaintiff's counsel on April 14, 2017 referenced "necessary documents" that Plaintiffs' counsel would prepare if the financial terms of the potential settlement were accepted. (Dkt. 36-3 at 3). Defendants never contradicted that requirement, and even confirmed it in writing, stating that Plaintiff's counsel "will draft the agreement." (*Id*. at 1). The facts that Defendants confirmed that there was only a "potential settlement" and asked Plaintiff to "draft the agreement" demonstrate that the Parties never reached an agreement on all of the material terms of the potential settlement.

More importantly, and as entirely ignored by Defendants, the parties never reached consensus on that draft agreement. As contemplated in the parties' correspondence, Plaintiff's counsel sent a draft settlement agreement to Defendants on May 1, 2017. (Declaration of Michael J. McMorrow ("McMorrow Dec."), ¶ 3, Ex. A). Two weeks later, Defendants' counsel responded with edits to the draft agreement that significantly changed the scope of the release from what was originally proposed by Plaintiff in the initial draft. (McMorrow Dec. ¶¶ 6–7, Exs. B & C). The parties never reached agreement on the scope of what would be released and what would not be released, and eventually, Plaintiff terminated the negotiations. (McMorrow Dec. ¶¶ 8–10).

Critical to understanding why the negotiations eventually terminated is the fact that at the same time that Plaintiff was negotiating resolution of this action, a potentially-related action was pending by Plaintiff in this District, titled *Garvey v. American Bankers Insurance Company of Florida, et al*., No. 17-cv-00986 (N.D. Ill.) ("*Garvey II*"). In *Garvey II* Plaintiff pled claims against other corporate entities that engaged in nearly-identical conduct as the Defendants did here. Plaintiff does not know, and has never known, whether his claims in *Garvey II* might be potentially related to this case, and sought to ensure that his claims in *Garvey II* would not be released in this

case. (McMorrow Dec. ¶ 3). To that end, Plaintiff crafted the potential settlement to specifically exclude the claims in that case from the settlement. Defendants' revisions to the proposed settlement agreement deleted that exclusion and expanded the scope of the release significantly, which led to the impasse in the negotiations at issue here. (McMorrow Dec. ¶ 7, Ex. C). Thus, while the parties may have come to terms on the rudimentary terms of a potential settlement – namely the amount of the settlement and the timing of the potential payment – the parties never reached agreement on the critical term of the release to be included in any such agreement.

**II.     ARGUMENT**

    **a.     The Parties' Settlement Discussions Required a "Necessary" Written Settlement Agreement, To Which the Parties Never Agreed.**

The Parties' settlement discussions, as Defendants' own exhibits demonstrate, required that the terms of their agreement be finalized in a written settlement agreement to be agreed to by the parties. As Exhibit 2 to the Roth Declaration makes clear, Plaintiff's counsel proposed financial terms of the proposed settlement and a payment schedule, with the explicit condition that Plaintiff's counsel would "prepare the necessary documents." (Dkt. 36-3, at 3). Upon accepting slightly revised financial terms, counsel for Defendants responded that it required "terms to be reflected in a settlement agreement." (*Id*., at 2). Defense counsel continued to refer to the proposed settlement as a "potential settlement" in later correspondence asking Plaintiff's counsel to draft the proposed settlement agreement. (*Id*. at 1).

Illinois law is averse to enforcing tentative agreements that are contingent on the signing of formal or final documents. *PFT Roberson, Inc. v. Volvo Trucks North America, Inc*., 420 F.3d 728, 731 (7th Cir. 2005). In such cases, there is no enforceable agreement until the document has been executed, even if the parties had agreed point-by-point on its provisions. *Lambert Court v. Evans,* 575 F.2d 132, 135 (7th Cir. 1978); *In re Marriage of Lorton,* 203 Ill.App.3d 823, 827, 561

3

N.E.2d 156, 148 Ill. Dec. 850 (Ill. App. 1990);*Cf., Empro Mfg. Co., Inc. v. Ball-Co Mfg., Inc.*, 870 F.2d 423, 425 (7th Cir.1989).

That is the case here. As demonstrated amply by Defendants' own filings, any proposed settlement in this case was contemplated by all parties to require a final written settlement agreement between the parties. Defendants' counsel even admitted that the parties only "began negotiating its language" on May 1, 2017, which is the date on which Plaintiff's counsel sent the (later-rejected) draft agreement to Defendants' counsel. (*See* Roth Decl., ¶ 4). No such agreement was ever able to be finalized, due to the failure of the parties to agree on the terms of that proposed written agreement, particularly the release. (*See* McMorrow Dec. ¶¶ 6–8). As a result, no settlement was ever reached.

      **b.**      **Defendants Rejected Plaintiff's Proposed Settlement Agreement by Changing Material Terms of the Proposed Agreement.**

Defendants rejected the proposed settlement agreement that they asked Plaintiff to prepare by changing the terms of the release language proposed by Plaintiff. The revised draft settlement agreement sent by Defendants on May 15, 2017 drastically altered the release provision proposed by Plaintiff. As shown in the redlined draft settlement agreement, Defendants removed language from the release that specifically excluded the *Garvey II* claims from the release, and additionally removed language limiting the release to "claims arising out of or relating to" this case, and even extended the scope of release to claims arising in the future. (*See* McMorrow Decl., Ex. C, at 1). Thus, Defendants not only rejected the release language excluding the *Garvey II* case, but also purported to extend the release to all claims against Defendants and (many) others, even if unrelated to this case, and even if the claims have not yet accrued.

Release provisions "in settlement agreements are inherently material." *See Trendmasters, Inc. v. Walgreen Co.*, 1996 U.S. Dist. LEXIS 10446, 1996 WL 422273 (N.D. Ill.); *Ferrostaal Inc.*

4

*v. Omnitrax Logistics, L.L.C.,* 1998 U.S. Dist. LEXIS 15360, *11-12 (N.D. Ill. Sept. 10, 1998); *Simmons v. Collection Prof'l, Inc.*, No. 09-cv-1198, 2010 U.S. Dist. LEXIS 64796, 2010 WL 2663100, at *2 (C.D. Ill. June 25, 2010) (finding no settlement agreement was reached where the parties did not agree on the scope of the release and that term was material). The Seventh Circuit has even suggested that the "most material term in any settlement agreement is the release." *Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 997 (7th Cir. 2001). Because the release is an "inherently material" term and likely the "most material" term, Defendants' rejection of the release language was both a rejection of the settlement proposed by Plaintiff and a counteroffer. Defendants admit as much when they state that they "began to *negotiate[e]* its language, *including a carve out from Plaintiff's release*[.]" (Roth Decl., ¶ 4) (emphasis added). Plaintiff was under no obligation to accept Defendants' counteroffer in these subsequent negotiations, and never did.

It is axiomatic that a response purporting to accept an offer that does not comply strictly with the terms of that offer - that is, a response that is not the "mirror image" of the offer - is not an acceptance at all, but a counteroffer. *Hubble v. O'Connor*, 291 Ill. App. 3d 974, 980, 684 N.E.2d 816, 225 Ill. Dec. 825 (Ill. App. 1997). Even a minor deviation is a rejection of the offer. *See Dawson v. General Motors Corp.*, 977 F.2d 369, 374 (7th Cir. 1992). Any counteroffer extinguishes the original offer, any subsequent attempt to accept is inoperative, and "the parties go 'back to the drawing board.'" *People v. Henderson*, 211 Ill.2d 90, 103-104, 809 N.E.2d 1224, 1232, 284 Ill. Dec. 278 (Ill. 2004); *see also Hicks Road Corp. v. Marathon Oil Co.*, 1994 U.S. Dist. LEXIS 9095, 1994 WL 327361, at *4-5 (N.D. Ill. 1994); 1 Richard A. Lord, WILLISTON ON CONTRACTS, § 5.3 (4th ed. 1990); Restatement (Second) of Contracts §§ 36, 38, 39 (1981).

Although Defendants claim that "Ultimately, Defendants agreed that Plaintiff could retain this language [excluding the *Garvey II* claims from the release]" (Roth Decl., ¶ 4), the key word

5

is "ultimately." Defendants exclude from their declaration and supporting documents the fact that they rejected the settlement agreement drafted by Plaintiff, instead attempting to frame the issue as a matter of "negotiating" the agreements' language. (*Id.*)

However, Defendants did not agree to the language of the release until **after** Plaintiff rejected the draft settlement agreement and called off the settlement discussions. Plaintiff first informed defendants of this rejection on May 19, 2017, in an email to counsel for Defendants, and later reiterated that rejection in a court hearing that same day. (McMorrow Decl., ¶9, Ex. D). Plaintiff also informed Defendant's counsel of the same in an email on May 31, 2017. (McMorrow Decl., ¶ 10, Ex. E). Defendants did not "ultimately" agree to the language until after this second written notification of the rejection. (McMorrow Decl., ¶ 11, Ex. F).[1] Defendants' attempt to fudge the fact that Plaintiff had already called off negotiations before they purported to agree to the release language proposed by Plaintiff demonstrates that Defendants know no agreement was ever reached. Defendants' four-month delay in filing their Motion when they purport that the settlement was reached in mid-April only further undermines any argument that a settlement was reached.

### III. CONCLUSION

Defendants' Motion is nothing more than an attempt to turn a single sentence of an email – "my client accepts" – into a settlement that both parties understood could not be resolved in such an informal way. It is not. Moreover, Defendants simply ignore the fact that they changed a material term of the draft settlement agreement to drastically enlarge the scope of the release and

---

[11] Plaintiff notes that, although Defendants' counsel's Declaration states that Defendants "ultimately" agreed to the scope of the release, and although Defendants' counsel attaches the emails between counsel that Defendants consider helpful to their argument, they neither mention nor attach the emails demonstrating that their purported acceptance of the release language came after they first rejected Plaintiff's proposed release, and after Plaintiff informed them that he was "no longer interested in settling" on the terms proposed in the draft settlement agreement.

6

remove the carve-out for other pending litigation, and thereby *themselves* rejected any potential settlement. As such, Defendants' Motion should be denied.

Wherefore, Plaintiff Terence Garvey respectfully requests that this Honorable Court deny Defendants' Motion to Enforce Settlement Agreement, and for such other and further relief as this Court deems appropriate.

Dated: September 8, 2017

Respectfully submitted,

TERENCE GARVEY, individually and on behalf of classes of similarly situated individuals

By: /s/ Michael J. McMorrow
      One of His Attorneys

Michael J. McMorrow
MCMORROW LAW, P.C.
One North LaSalle Street, 44th Floor
Chicago, IL 60602
Tel: (312) 265-0708
mike@mjmcmorrow.com

Myles McGuire
Evan M. Meyers
Eugene Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com
*Attorneys for Plaintiff and the Putative Classes*

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 8, 2017, I caused the foregoing *Plaintiff's Opposition to Motion to Enforce Settlement Agreement* to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to the following counsel of record:

David S. Wayne
Hal R. Morris
Michael A. Jacobson
ARNSTEIN & LEHR, LLP
120 S. Riverside Plaza, Ste. 1200
Chicago, IL 60606
dwayne@arnstein.com
hmorris@arnstein.com
majacobson@arnstein.com

Mitchell Neil Roth
Genevieve Claire Bradley
ROTH JACKSON GGIBBONS CONDLIN, PLC
919 East Main Street, Suite 2110
Richmond, VA 23219
mroth@rothdonerjackson.com
gschmitt@rothdonerjackson.com

/s/ Michael J. McMorrow